**SECOND DIVISION**
**MILLER, P. J.,**
**MERCIER and COOMER, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**June 15, 2020**

# In the Court of Appeals of Georgia

A20A0491. HUNTER v. THE STATE.

MERCIER, Judge.

A jury found Dimanta Hunter guilty of conspiracy to purchase marijuana and not guilty of multiple other crimes related to the fatal shooting of Kenneth Hearst.[1] Hunter appeals the conviction, contending that the evidence was insufficient to support the guilty verdict, that the trial court erred by failing to sua sponte instruct the jury on possession of marijuana as a lesser-included offense of conspiracy to purchase

---

[1] Along with Gary Bing, Jr., and Jaharvis Lovelace (a/k/a "Horn"), Dimanta Hunter (a/k/a "Monte," a/k/a "Fam-Lay") was indicted on charges that included murder, felony murder, participation in criminal street gang activity, criminal attempt to commit armed robbery, aggravated assault with a deadly weapon, aggravated battery, conspiracy to purchase marijuana, and possession of a firearm during the commission of a felony. Hunter was found not guilty on all counts except the charge of conspiracy to purchase marijuana.

marijuana, and that trial counsel provided ineffective assistance by failing to request an instruction on that lesser-included offense.[2] For the reasons that follow, we affirm.

Viewed in the light most favorable to the verdict, the evidence showed the following. Kenneth Hearst's mother testified that Hearst lived with her at her house. Hearst "sold drugs . . . from the side of [his mother's] house," "like to the back of [the] yard," and also from the neighbor's house. Hearst's mother saw Hearst selling drugs every day or every other day, and in court she identified Hunter as one of Hearst's customers. Several other witnesses testified to the following.[3]

On August 4, 2016, at around 10 a.m., Jaharvis Lovelace was at Gary Bing's house when he asked Bing to drive him to "get some marijuana." Bing and Lovelace then left in a gold Toyota Camry. The Camry arrived near Hearst's residence about 40 minutes later. Lovelace, Hunter and a third man walked across the street to Hearst's house. The trio left that house, then walked to the neighbor's house - the same house from which Hearst's mother said Hearst sold drugs.

---

[2] Hunter's first appeal (Case No. A19A1773) was dismissed as untimely. This appeal follows the grant of his motion for an out-of-time appeal.

[3] The State also introduced a time-stamped surveillance videorecording, captured by a nearby business, showing people and vehicles as they arrived in and departed from the area on the day of the crimes.

Hearst's friend R. B. was on the neighbor's front porch that morning visiting Hearst when Hunter, Lovelace and the third man arrived on the porch. R. B. was familiar with several of Hearst's buyers, and had seen Hunter in Hearst's backyard before. On the morning of the charged crimes, Hearst had sold marijuana to another customer from the neighbor's house before the three men arrived.

When the three men arrived on the neighbor's porch, Hearst asked Lovelace for the $20 Lovelace owed him. Lovelace replied, "I got you." Hearst had marijuana available at the time, and money and drugs were visible on a table. R. B., who was still on the porch, was bothered by the interaction between Hearst and the three men regarding the marijuana sale. Asked at trial why he was bothered, R. B. explained, "[Lovelace] had $20 and the person he came with had $10," and "[Lovelace] could have got both of their money, put it together and got more weed for what he just paid for it." R. B. added that he was bothered by Lovelace's "vibe" and Hunter's "demeanor."

Before Hearst gave Lovelace any marijuana, R. B. started to leave. But Hunter stood in the doorway and refused to move aside, blocking R. B.'s exit. R. B. brushed shoulders with Hunter and left the neighbor's house.

Shortly after R. B. left, witnesses heard gunfire. Both Hearst and Lovelace were shot. Lovelace was injured, and Hearst died from his wounds. Hunter, Lovelace, and the third man were seen running from the house together. Two of the men were carrying guns, and one of the three men was limping and appeared to be injured. Two of the fleeing men got into a parked gold car, backed the car up, retrieved the injured third man, and drove away. A witness identified Hunter and Lovelace as two of the three men who fled the scene together immediately after the shooting, and identified Hunter as one of the men who carried a gun as he fled. Driving the Camry, Hunter transported Lovelace to a hospital emergency room, left him there, and drove away.

Hunter, Bing and Lovelace were jointly indicted and tried on multiple charges. Hunter was found guilty only of conspiracy to purchase marijuana.

1. Hunter contends that the evidence was insufficient to support the verdict because the State's witnesses were not credible and, even if he went to the house to purchase marijuana, there was no evidence that he conspired with anyone to do so. We disagree.

> In evaluating the sufficiency of the evidence, our task is to ascertain whether, viewing the evidence in the light most favorable to the jury's verdicts, there was evidence establishing each essential element of each

4

crime of which the defendant was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

*Griffin v. State*, 294 Ga. 325, 326 (751 SE2d 773) (2013). "We do not re-weigh testimony, determine witness credibility, or address assertions of conflicting evidence." *Jones v. State*, 307 Ga. 505, 505 (1) (837 SE2d 288) (2019) (citation and punctuation omitted).

The indictment charged that Hunter conspired with Bing and Lovelace to purchase marijuana at or around a specified address (namely, the neighbor's residence) and that at least one of the three men did an overt act to effect the object of that conspiracy, in violation of OCGA §§ 16-13-30 and 16-13-33.

"A person commits the offense of conspiracy to commit a crime when he together with one or more persons conspires to commit any crime and any one or more of such persons does any overt act to effect the object of the conspiracy." OCGA § 16-4-8.

> A conspiracy may be shown by proof of an agreement between two or more persons to commit a crime. The existence of the conspiracy agreement may be established by direct proof, or by inference, as a deduction from acts and conduct, which discloses a common design on their part to act together for the accomplishment of the unlawful purpose. The existence of a common design or purpose between two or

5

more persons to commit an unlawful act may be shown by direct or circumstantial evidence.

*Darville v. State*, 289 Ga. 698, 699 (2) (715 SE2d 110) (2011) (citation omitted).

> The [S]tate need not prove an express agreement between the co-conspirators; it only must show that two or more persons tacitly came to a mutual understanding to accomplish or to pursue a criminal objective. . . .The conspiracy may be inferred from the nature of the acts done, the relation of the parties, the interest of the alleged conspirators and other circumstances, such as presence, companionship and conduct before and after the commission of the alleged offense.

*Melesa v. State*, 314 Ga. App. 306, 308 (724 SE2d 30) (2012) (citation omitted); see generally *Boyd v. State*, 306 Ga. 204, 213 (3) (830 SE2d 160) (2019) (jury charge on conspiracy was authorized where there was no evidence that the defendants had any discussions or express agreement about committing a crime but there was evidence of a common design or mutual understanding to commit a crime).

In this case, the State presented evidence that Hunter had previously gone to Hearst's home to purchase marijuana from him; that on the morning of the crimes, Hunter accompanied Lovelace to Hearst's home when the latter went to purchase marijuana; that Hunter entered the neighbor's porch with Lovelace, where Hearst was selling marijuana; that drugs and money were visible on the porch; that Hunter

6

remained with Hearst and Lovelace as they discussed the sale of marijuana for $20 and $10; that Hunter blocked R. B.'s exit as he was leaving the residence; that Hunter, Lovelace and the third man fled the scene together after the shooting; and that Hunter drove Lovelace to the hospital and immediately left him there. The jury was authorized to infer from the circumstances that Hunter was guilty of conspiracy to purchase marijuana by his participation in the drug transaction and his conduct before and after the purported sale. See generally *Evans v. State*, 306 Ga. 403, 408 (1) (831 SE2d 818) (2019).

2. Hunter contends that the trial court erred by failing to instruct the jury on possession of marijuana as a lesser-included offense of conspiracy to purchase marijuana.

Defense counsel did not object when the trial court failed to give such a charge. Therefore, Hunter must show that the court's failure to give the charge constitutes plain error which affects the substantial rights of the parties. OCGA § 17-8-58 (b).

> To demonstrate plain error, the Appellant must show that the failure to give the instruction was erroneous, the error was obvious, the lack of the instruction likely affected the outcome of the proceedings, and the error seriously affected the fairness, integrity, or public reputation of judicial proceedings.

7

*Powell v. State*, 352 Ga. App. 14, 19 (4) (833 SE2d 602) (2019) (citation and punctuation omitted). Hunter has not shown that the failure to give the charge was erroneous.

"Under OCGA § 16-1-6 (1), a crime is included in the other where it is established by proof of the same or less than all the facts or a less culpable mental state than is required to establish the commission of the other crime." *Drinkard v. Walker*, 281 Ga. 211, 213 (636 SE2d 530) (2006) (citation and punctuation omitted).

> Under the "required evidence" test, . . . the applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

Id. at 215 (citation and punctuation omitted).

The offense of possession of marijuana is not a lesser-included offense of conspiracy to purchase marijuana, as the facts necessary to prove each offense are different. See OCGA § 16-13-30 (j) ("[I]t shall be unlawful for any person to possess, . . . purchase, sell, or possess with intent to distribute marijuana."); OCGA § 16-13-33 ("Any person who attempts or conspires to commit any offense defined in this article shall be, upon conviction thereof, punished by imprisonment not exceeding the

8

maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy."); OCGA § 16-4-8 ("A person commits the offense of conspiracy to commit a crime when he together with one or more persons conspires to commit any crime and any one or more of such persons does any overt act to effect the object of the conspiracy."). Possession of marijuana does not require proof of a conspiracy or a purchase, and conspiracy to purchase marijuana does not require proof of possession. Because each of the crimes contains mutually exclusive elements - i. e., each crime requires proof of a fact not required to establish the other crime - one crime was not included in the other. See *Drinkard*, supra at 216-217; see generally *Dimas v. State*, 276 Ga. App. 245, 246 (2) (622 SE2d 914) (2005) (crime of criminal solicitation is not a lesser-included offense of trafficking in methamphetamine because the facts necessary to prove each offense differ). Thus, Hunter was not entitled to a charge on possession of marijuana, and the trial court did not err by failing to give such an instruction. See generally *Dimas*, supra.

3. Hunter contends that his trial counsel provided ineffective assistance by failing to request a jury instruction on marijuana possession as a lesser-included offense of conspiracy to purchase marijuana. Inasmuch as Hunter was not entitled to such an instruction, he has not shown that trial counsel's failure to request the

9

instruction constituted deficient performance. See generally *Wilson v. State*, 351 Ga. App. 794, 798 (2) (833 SE2d 175) (2019).

*Judgment affirmed. Miller, P. J., and Coomer, J., concur*.